330 So.2d 591 (1976)
Horace SHARPLIN
v.
STATE of Mississippi.
No. 48934.
Supreme Court of Mississippi.
April 20, 1976.
*593 Morris C. Phillips, Jr., Robert N. Brooks, Carthage, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, SUGG and WALKER, JJ.
SUGG, Justice:
Horace Sharplin, defendant, was indicted for murder and convicted of manslaughter for the death of Thelma Sharplin, his estranged wife. We reverse and remand for a new trial. The questions are: (1) Was the county attorney disqualified from participating in defendant's prosecution because of the attorney's prior representation of defendant in a divorce suit? (2) Was it error to admit evidence of a conditional threat? (3) Did the trial judge err by requesting the numerical division of the jury prior to return of a verdict? (4) What is the proper instruction to give a hung jury?
Defendant and Thelma Sharplin instituted divorce proceedings against one another during mid-1974. Defendant hired the County Attorney of Leake County to represent him in the matter. Defendant was granted temporary custody of the couple's four-year-old daughter and Mrs. Sharplin was given weekend visitation rights. Pending the divorce, Mrs. Sharplin and Paul Turner, her boyfriend, moved into a house trailer located in a trailer park in Carthage. Shortly before 7:00 a.m. on August 27, 1974, residents of the trailer park awakened to the sound of an argument emanating from Mrs. Sharplin's trailer. The argument was followed in quick succession by a girl's voice calling "Daddy," a man's voice commanding "lay down on the floor," and the echo of two gunshots. Several minutes later a man, whom defendant subsequently identified as himself, emerged from the rear door of the trailer carrying a small girl. Defendant knocked at the doors of several residences in the neighborhood seeking police assistance but finally drove himself and the child to the Carthage Police Department. There he informed an officer that he had found Mrs. Sharplin and Paul Turner dead in the trailer. Investigating officers found Mrs. Sharplin slumped on a couch and Paul Turner lying on the living room floor, both scantily clad. Both victims had been shot in the head. Shortly thereafter, defendant was arrested and indicted for the murder of Mrs. Sharplin.
Prior to trial defense counsel moved to exclude the county attorney from participating in the case on the ground that he represented defendant in a divorce suit at the time of the killing and he "possesses or could possess personal knowledge of a privileged nature concerning this case." In a hearing on the motion, the county attorney testified that he represented defendant in the divorce suit and admitted that he and defendant discussed threats defendant allegedly made against his wife. However, the attorney asserted that nothing he had learned while representing defendant concerned the present criminal charge because his representation ended with the death of defendant's wife. Defense counsel's motion was overruled. During trial and in response to a question asked by the county attorney, a state's witness testified that defendant made an uncommunicated threat against Mrs. Sharplin two months prior to her death. Defendant now complains that this line of questioning was possible only because of confidences he shared with the county attorney during their former relationship.
*594 It was reversible error to permit the county attorney to participate in defendant's prosecution. Although a prosecuting attorney's prior representation of a defendant in a civil suit does not ipso facto bar that attorney from participating in a subsequent prosecution of the defendant, the attorney should be disqualified if (1) the criminal prosecution is substantially related to the prior civil suit or involves essentially the same facts, or (2) the attorney will be called upon to use against the defendant confidential information gained through their former relationship. Gajewski v. U.S., 321 F.2d 261, 267 (8th Cir.1963), cert. denied 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); 27 C.J.S. District and Prosecuting Attorneys § 12(6)c at 664-65 (1959).
The facts of this case satisfy both of these criteria. A single event, the death of defendant's wife, terminated the county attorney's civil representation of defendant and plunged him into the criminal prosecution of his former client. Undoubtedly, the marital strife that precipitated the divorce suit played an integral, if not all-too-familiar, role in the death of defendant's wife and his criminal prosecution. Viewed in its entirety, the relationship between the civil representation and the criminal prosecution was so substantial and the facts of each so intertwined that no attorney could be expected to lay aside the confidences imparted to him during the civil suit and proceed with a criminal prosecution of his former client without violating the legal and ethical obligations owed to the former client. Notwithstanding the county attorney's earnest efforts to avoid a conflict of interest, his participation in defendant's trial was reversible error.
Our holding is not grounded solely on a real or imagined violation of the attorney-client privilege but draws upon the broader, more exacting ethical obligations and professional responsibilities each attorney owes to a client and the bar to avoid impropriety as well as the appearance thereof.
Defendant complains that the trial court erred by overruling his objection to evidence of a conditional threat he made against his wife. A state's witness testified that two months prior to the death of defendant's wife, defendant told him "if they got custody, and we had been talking about Thelma and Paul Turner, if they got custody of the child, that if he had to, he would quit his job, follow them to Canada, and kill them both." The condition of this threat (permanent custody) was never fulfilled. The trial court admitted this evidence on the grounds that it was not too remote but was probative of the defendant's state of mind. Defendant now contends that evidence of a conditional threat is inadmissible unless it is first shown that the condition was met, citing Clark v. State, 123 Miss. 147, 85 So. 188 (1920) and Cordell v. State, 136 Miss. 293, 101 So. 380 (1924).
Clark v. State, supra, held it error to exclude evidence of a communicated conditional threat decedent made against defendant, holding that the conditional nature of the threat did not render it inadmissible. The Court specifically declined to say whether admission of the threat was dependent upon fulfillment of the condition, holding that if admissibility were dependent upon satisfaction of the condition, that condition was met in this case. Cordell v. State, supra, held that evidence of a conditional threat was admissible because the condition was fulfilled, citing Clark. Subsequently, Smith v. State, 152 Miss. 114, 118 So. 710 (1928), held admissible the defendant's threat that his victim "had better not start anything around here; I will shoot him," on the ground that the threat tended to show malice. Clark and Cordell were cited for support but the matter of a conditional threat was not discussed. To summarize the quandary, Clark declined to state whether fulfillment of the condition was a requisite for admission of the threat; Cordell held evidence of a threat admissible because the condition was fulfilled; Smith held admissible an apparent *595 conditional threat without ever discussing the condition.
We hold that the conditional nature of a threat affects only its weight and not its admissibility. Admissibility does not depend upon fulfillment of the threat; as with other threats, evidence of conditional threats is admissible against an accused to prove state of mind, intent and malice. 1 F. Wharton, Criminal Evidence § 202 at 47 (13th ed. C. Torcia 1972). Accord 1 J. Wigmore, Evidence in Trials at Common Law § 107 at 543 (3rd ed. 1940); 40 Am.Jur.2d Homicide § 316 at 587 (1968); 40 C.J.S. Homicide § 236b at 1168-69 (1944). The lower court correctly held that the conditional nature of the threat was no bar to its admissibility. The remoteness of the threat was a matter for the trial judge to consider and we cannot say that he abused his discretion by admitting this evidence.
We next consider the trial judge's request for the numerical division of the jury. After deliberating for about an hour and forty minutes, the jury returned to the courtroom and informed the trial judge that no verdict had been reached. The judge then requested the numerical division of the jury without reference to guilt or innocence and was informed that the division was "Nine and three."
Thereupon the following colloquy took place:
BY THE COURT:
How long has the jury been nine to three?
BY THE FOREMAN:
Not too long.
BY THE COURT:
Well, the jury has been considering this case now for about an hour and thirty, thirty-five minutes. The Court feels this jury should be able to get together on this case, and I am going to let you go back to the jury room and deliberate some further. Let the jury go back to the jury room.
The jury returned for further deliberations and delivered its guilty verdict approximately thirty minutes later. Defendant contends that the request and receipt of the jury's numerical division was per se reversible error, citing Brasfield v. U.S., 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). The defendants in Brasfield were convicted of federal charges in a federal court. After several hours of deliberating, the jury returned to the courtroom without having reached a verdict. The court requested the numerical division and was told that it was nine and three, no indication of guilt or innocence being given. The Supreme Court held that the inquiry itself was reversible error, reasoning that a request for numerical division has a coercive and suggestive effect upon those jury members who have not acquiesced in the decision of the majority. Although Brasfield has been dutifully followed in the federal circuits, United States v. Hayes, 446 F.2d 309 (5th Cir.1971), Jones v. Norvell, 472 F.2d 1185 (6th Cir.1973), cert. denied, 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973), it has received a mixed reception among the several state courts which appear more or less evenly divided on its applicability. Some jurisdictions hold that the request and receipt of numerical division without reference to guilt or innocence is reversible error. Taylor v. State, 17 Md. App. 41, 299 A.2d 841 (1973); People v. Wilson, 213 N.W.2d 193, 195 (Mich. 1973); Kersey v. State, 525 S.W.2d 139, 141 (Tenn. 1975). Other jurisdictions permit divulgement of numerical division without reference to guilt or innocence on the theory that the trial court has the right to ascertain the probability of agreement among the jurors. People v. Carter, 68 Cal.2d 810, 69 Cal. Rptr. 297, 442 P.2d 353 (1968), rev'd on other grounds; Joyner v. State, 484 P.2d 560 (Okla. Crim. App. 1971); Huffaker v. State, 119 Ga. App. 742, 168 S.E.2d 895 (1969); State v. Morris, 476 S.W.2d 485, 489-90 (Mo. 1971).
*596 We conclude that Brasfield was not grounded in a specific constitutional provision that has subsequently been applied to the states through the Fourteenth Amendment, but was announced as a rule of procedure to be followed in the federal courts. We decline to follow this federal procedural rule because we believe that receipt of the jury's numerical division serves a legitimate purpose consonant with the trial judge's broad powers of control over the conduct of a trial: it enables the trial judge to ascertain the likelihood of agreement among the jurors. We hold therefore that the mere request and receipt of the jury's numerical division without reference to guilt or innocence does not coerce the jury and is not error. We believe that the possibility of coercion, if any, lies in the trial judge's conduct and comments after he receives the division, that is, whether the judge merely affords the jury additional time to deliberate or whether he attempts to force a verdict by suggestive comments or coercive measures.
The object of the jury system is to secure a verdict by a comparison of views and by agreements among the jurors themselves. Although the verdict of the jury should represent the opinion of each individual juror, it does not follow that opinions of jurors may not be changed by conference with each other in the jury room. If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: "Please continue your deliberations," or he may give the following instruction set forth in the tentative draft of Mississippi Mode Jury Instructions: Criminal, Volume 1, page 50.[1]
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.[2]
We approve the foregoing instruction. It may be given in either criminal or civil cases when the trial judge is confronted by a hung jury. Following publication of this opinion the "Allen Charge" in any of its various forms should not be given. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
In remanding this case for a new trial we note that the state introduced evidence of defendant's reputation for violence before defendant put his reputation in issue. This was error and should not recur on retrial. Pegram v. State, 223 Miss. 294, 301-02, 78 So.2d 153 (1955). Additionally, the trial judge erred when he told the jury that they would be sequestered *597 for the night to permit the appearance of a "very material witness." The witness was the state's final witness and indeed proved material when he testified to certain incriminating statements made by defendant that could be viewed as tantamount to a confession. However, the trial judge's remarks exceeded the permissible bounds of latitude generally accorded a judge in explaining the reasons behind a ruling and served only to unduly emphasize the importance of the state's final witness. Cf. Ratliff v. State, 313 So.2d 386, 388 (Miss. 1975).
The other assignments of error have been considered but do not merit discussion.
This case was considered by a conference of the Judges en banc.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.
LEE, J., took no part.
NOTES
[1] Mississippi Model Jury Instructions: Criminal was prepared by a committee of trial judges in cooperation with the Mississippi Judicial College. This work will be available to the bench and bar within the near future.
[2] The instruction is in accord with Dixon v. State, 306 So.2d 302 (Miss. 1975) and Section 5.4 ABA Standards for Criminal Justice.