KING, P.J.,
for the Court:
¶ 1. Michael Cannon has appealed his conviction of murder in the Circuit Court of Jackson County, Mississippi. The circuit court sentenced Cannon to serve a life term in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Cannon raises the following issues on appeal: 1) whether the trial court erred by ruling that the State’s peremptory strike of juror number two was for a racially neutral reason, 2) whether the trial court erred by overruling the appellant’s motion in limine concerning prior threats to the victim, and 3) whether the verdict was against the overwhelming weight of the evidence.
FACTS
¶ 2. Michael Cannon and Shelia Selman had lived together for some time in Cannon’s home in Moss Point, Mississippi. Selman had two children, one from a previous relationship and a daughter with Cannon. The relationship was a turbulent and violent one during which the two, on several occasions, separated only to reconcile. Whenever a breakup occurred, Selman would leave Cannon and visit her mother, Mary Middleton, in Gautier, Mississippi. After a brief hiatus at her mother’s home, Selman would return to live with Cannon. In February 1997, when the final breakup occurred, Selman took the children and went to live with her mother.
¶ 3. On April 24, 1997, Cannon called Middleton’s home a total of six times requesting to talk with Selman and to see his daughter, Shaleah. Middleton told Cannon that the child was asleep. Approximately ten minutes after the last call, Cannon appeared at Middleton’s home in Gautier. ■ Cannon asked to see his daughter and told Middleton and Selman that his car had been damaged when he hit a deer while driving from Moss Point to Gautier. Cannon ascertained that the children were asleep and then asked Sel-man to drive him back to Gautier because his car had been disabled in the accident. Selman agreed and left her mother’s home with Cannon. While driving back to Gautier, Cannon and Selman began to argue. Cannon, with Selman’s revolver, shot her four times and then turned the weapon on himself. When Selman did not return, Middleton contacted the police.
¶4. Ernest McIntosh and his fiancee were traveling on the interstate on the night of the shooting. Selman’s car was parked on the shoulder of the interstate with the headlights on and the engine running. McIntosh and his fiancee observed the site and stopped to see if the motorists needed assistance. When McIntosh approached the car and looked inside, he saw Selman covered in blood and lying across Cannon’s lap. Cannon pointed a gun at McIntosh and told him that no one needed help. McIntosh and his fiancee quickly exited the scene and called 911. Deputy Bruce Evans, the officer dispatched to the shooting scene, found Selman’s car parked *732 on the shoulder of Interstate Ten. Cannon’s body was positioned partially outside the vehicle on the passenger’s side, and Selman was in the driver’s seat slumped toward the passenger’s side. Upon inspection of the car, Evans observed a handgun on the floor board of the car.
¶ 5. During the course of the investigation, Officer John Miller recovered four shell casings from the front interior area of the car, four projectiles from the driver’s side where Selman was seated, and one projectile from the passenger’s side where Cannon had been seated. The autopsy report revealed that Selman suffered from gunshot wounds. She had four wounds, one to the head, a graze wound to her wrist, a wound to her chest and a wound to her thigh. All the wounds were inflicted from the right side going downward into her body. Selman died from gunshot wounds that perforated her heart and lung, causing massive internal hemorrhage and damage to her brain. Cannon suffered from a self-inflicted gunshot wound to the skull and was taken to the hospital for treatment.
¶ 6. Bobbie Ridley was the manager of the convenience store where Selman worked. She stated that six months prior to the shooting, on three or four occasions, Cannon entered the store and frightened Selman with threats of violence. Middleton testified that Selman, who had been living with her for three months prior to the shooting, stopped seeing Cannon because of his violent behavior.
¶ 7. In December 1997, a Jackson County Grand Jury indicted Cannon for the murder of Shelia Selman. Tried and convicted on the murder charge, Cannon was sentenced to serve a life term in the custody of the Mississippi Department of Corrections. Cannon’s motion for judgment notwithstanding the verdict, or in the alternative, a new trial having been denied, he now appeals his conviction and sentence.
Issues and Analysis
I.
Whether the trial court erred by ruling that the State’s peremptory strike of juror number two was for racially neutral reason.
¶ 8. Cannon argues that the State used its peremptory challenge to strike juror number two, Lloyd Stephen Sabino, an African American letter carrier, based solely on considerations of race in violation of the United States Supreme Court decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecution, in using its peremptory strike of Sabino, stated that “he kept his arms crossed, and he stared at the ceiling, and he was not attentive to me.” Cannon contends that the trial court erred by overruling his Batson objection to this strike. Cannon further asserts that the basis of the challenge to Sabino was racial and his absence from the final jury panel resulted in a non-representative jury in this case.
¶ 9. The practice of using peremptory strikes to systematically remove jurors of a particular race based solely on considerations of their race is not permitted under federal constitutional principles. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A defendant seeking to avail himself of the protection of Batson must first establish a prima facie case of discrimination. Coleman v. State, 697 So.2d 777, 785 (Miss.1997). Where the trial court requires that the State provide an explanation for its strike, this Court will presume that a prima facie case has been established. Pearson v. State, 746 So.2d 867 (¶ 8) (Miss.Ct.App.1998). See also Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). If the trial court determines that the defendant has made a prima facie showing of discrimination, the burden shifts to the State to provide a race-neutral explanation for challenging each potential black juror. Id. at 97. The prosecutor’s reasoning need not rise to the level of justifying the State’s exercise of a chai- *733 lenge for cause. Id. The prosecutor must articulate a neutral explanation related to the particular case that will be tried. Id. The defendant is then allowed to rebut the reasons offered by the prosecution. Bush v. State, 585 So.2d 1262, 1268 (Miss.1991)(citing Taylor v. State, 524 So.2d 565, 566 (Miss.1988)). The trial court then must determine if the defendant has established actual and purposeful discrimination. Batson, 476 U.S. at 98. In making this determination, the trial court is also required to consider whether reasons neutral on their face are a pretext for discrimination. Lord v. State, 749 So.2d 276, 279 (Miss.Ct.App.1999) (citing Harper v. State, 635 So.2d 864, 868 (Miss.1994)). When making this determination, the trial court must make an on-the-record factual determination of the merits for each of the State’s race-neutral reasons for exercising peremptory challenges against potential jurors. Hatten v. State, 628 So.2d 294, 298 (Miss.1993).
¶ 10. The Mississippi Supreme Court has held that “a trial judge’s factual findings relative to a prosecutor’s use of peremptory challenges on minority person’s are to be given great deference and will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence.” Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987). This Court will not reverse as long as the trial court was within its authority when it determined that the State articulated a race-neutral explanation. Willie v. State, 585 So.2d 660, 672 (Miss.1991). See also Griffin v. State, 607 So.2d 1197, 1203 (Miss.1992)(urging trial judges to allow counsel to place sufficient evidence in the record either proving or rebutting Batson issues).
¶ 11. In the present case, the State gave as its reason for striking juror number two that he kept his arms folded during questioning and that psychologists have suggested such a posture indicates a nonreceptive attitude towards the person speaking. The trial judge acknowledged this as a race neutral theory accepted by many people. However, the court declined to express an opinion as to the validity of this theory. Under the facts of this case, this Court holds that the State offered a race neutral reason for the exercise of its peremptory strike, and that the trial court did not abuse its discretion in accepting this reason.
II.
Whether the trial court erred by overruling the appellant’s motion in limine concerning prior threats to the victim.
¶ 12. Cannon contends that the court erred by overruling, in part, his motion in limine to exclude testimony about prior threats which he allegedly made to Selman over the course of their relationship. Cannon urges that statements Selman allegedly made to Ridley about these threats constituted inadmissible hearsay. Additionally, Cannon argues that these threats were too remote to be relevant. Although the court limited Ridley’s testimony to direct and observed instances of alleged bad acts, Cannon asserts that this limitation was not enough.
¶ 13. Bobbie Ridley testified that approximately six months prior to the shooting Cannon entered the store and threatened to rape Selman. Ridley called the police to remove Cannon from the premises. Ridley also testified that during the year that Selman was employed at the store she often appeared for work with bruises on her face. The admission of this evidence is within the discretion of the trial judge. That discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will only occur when an abuse of discretion results in prejudice to the accused. Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992). In Koch v. State, 506 So.2d 269, 273 (Miss.1987), the supreme court held that evidence of prior difficulties between the defendant and the decedent and evidence of threats by the defendant toward the dece *734 dent are admissible to show malice, premeditation and intent. Prior to Koch, the supreme court held that the trial judge did not abuse his discretion in admitting a conditional threat made by an accused two months prior to the killing of the deceased. Sharplin v. State, 330 So.2d 591, 595 (Miss.1976). The court reasoned that whether or not a threat is too remote to be admissible is a question within the sound discretion of the trial judge. Sharplin, 330 So.2d at 595. The conditional nature of a threat affects its weight and not its credibility. Id. We find no abuse of discretion in allowing Ridley’s testimony about the direct and observed threats Cannon made to Selman six months prior to the shooting.
III.
Whether the verdict was against the overwhelming weight of the evidence.
¶ 14. Cannon argues that the jury’s verdict was against the overwhelming weight of the evidence because the evidence, at best, indicates that Cannon was guilty of manslaughter. Cannon argues that the homicide occurred in the heat of passion and that Middleton’s testimony supports this theory. Cannon asserts that Middleton’s testimony establishes the existence of an amicable relationship between Cannon and Selman. While Cannon has pointed to evidence to suggest an amicable relationship between Selman and himself, he has not pointed to any evidence which suggests that this action occurred in the heat of passion. Nor has this court discovered such evidence in the reading of the record.
¶ 15. The Mississippi Supreme Court has held that manslaughter is the unlawful killing of another human being without malice, in the heat of passion. Cook v. State, 467 So.2d 203, 206 (Miss.1985). When determining whether a jury’s verdict was against the overwhelming weight of the evidence, we accept as true the evidence which supports the verdict. Isaac v. State, 645 So.2d 903, 907 (Miss.1994). Reversal is proper only if we are convinced that the trial court abused its discretion in failing to order a new trial. Id. Consistent with this standard, we find that the following evidence supports the jury’s verdict of murder: (1) Cannon deliberately shot Selman four times while inside the car; (2) Cannon failed to report the shooting and refused assistance from passing motorists who offered help; and (3) No evidence was offered which suggested that Cannon was provoked or acted in the heat of passion. Thus, no abuse of discretion occurred when the trial judge denied Cannon’s request for a new trial.
CROSS-APPEAL
IV.
Rulings on relevance of evidence are committed to the discretion of the trial judge.
V.
The State’s requested instruction S-7 is an incorrect statement of the law.
VI.
The trial court erred in submitting manslaughter instructions to the jury.
VII.
The trial court erred in giving instruction S2A.
¶ 16. The State argues four additional issues listed above in their cross-appeal. In the arguments in favor of these issues, the State references arguments previously made in their brief; however, they do not provide authority to support the issues. “Where assignments of error are unsupported by argument and authority, [this] court does not, as a general rule, consider them.” Minor v. State, 482 So.2d 1107, 1112 (Miss.1986). See also Drennan v. State, 695 So.2d 581, 586 (Miss.1997). In fact, the Mississippi Supreme Court has frequently held that propositions unsupported by reasons and authority are considered to have been waived. Thibodeaux v. State, 652 So.2d 153, 155 (Miss.1995); Dozier v. State, 247 Miss. 850, 852, 157 *735 So.2d 798 (1963). This Court finds no merit in the issues listed above.
¶ 17. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., AND IRVING, J., JOIN RESULT ONLY.