## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2015-KA-00643-SCT

*DONALD BELL a/k/a DONALD WAYNE BELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/2015 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILLIP BROADHEAD |
| | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/27/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Donald Bell appeals his conviction and sentence for attempted armed robbery. Due to the trial court's suggestive comments to a deadlocked jury, we reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

¶2.     On November 14, 2012, Bell drove to Southern Bancorp in Lambert, left his keys in the ignition, and entered the bank. He pulled a hood over his head and demanded $2,500 from the teller. Before she could respond, Bell pulled out a gun and attempted to get it under

her bullet-proof window. The teller ran down the hallway, attempting to alert her coworker, who was manning the drivethrough. When she got his attention, one called the police while the other called security. When the police arrived, Bell was standing at the teller's window with his hood still over his head. A fully loaded .22 caliber revolver was found in Bell's left pocket. At the sheriff's office, after being advised of his rights, Bell voluntarily provided a written confession.[1]

¶3.     Bell, who was the sole witness for the defense, does not dispute these facts. Rather, his theory of defense was that he was unable to form the requisite intent due to side-effects from his liver-transplant antirejection medications. According to Bell, he received a liver transplant in 2004. His antirejection medications cause ammonia to build up in his spleen. He has a medication to combat the ammonia buildup, but if he fails to take it regularly, the ammonia will "make [him] sort of out of [his] head" to the point he doesn't know where he is or what he's doing. Bell claimed to have had ten to fifteen such episodes in the past. He testified he does not remember anything that happened on the day of the crime. He does not remember going to the bank, speaking to the officers, writing the confession, or even being

---

[1]Bell's confession, verbatim, reads as follows:

I Donald Bell confess of the crime im charged. This morning I just woke up wanting out of debth. Thanksgiving coming then Christmas and no money. I was mostly thinking of kids and grand kids. I was never going to hurt anyone, I just thought they would give it to me, I don't know, Ive never felt like that before. I'm truly sorry to everyone I hurt [signed] Donald Wayne Bell 11-14-12.

in jail. While Bell identified his signature on his confession, he claimed he could read only part of the writing and could not identify it as his handwriting.

¶4.    The jury returned from deliberations and informed the court that they had failed to reach a unanimous decision. When asked if further deliberations would yield greater progress, the jurors' responses were mixed. Defense counsel's request to approach the bench was denied as premature. The judge inquired as to the numerical division of the jury. Learning the jury was split nine-to-three, the judge instructed them to go back and deliberate one more time. Prior to releasing them for further deliberations, he gratuitously directed this comment to the jury:

> But I don't want you going back there just being stubborn. Go back there with the seriousness of purpose because you came here to do a job and if we can get a unanimous decision from you, we would like to. All right. Go retire back to the jury room.

¶5.    Defense counsel immediately moved for a mistrial, arguing that the court's comment "place[d] undue pressure on those three individuals at this point to make up—come to a decision when their consci[ence] didn't allow them to issue a conclusion." That motion was denied. The jury returned a unanimous guilty verdict, and Bell was sentenced to a five-year term of imprisonment. Bell appealed.

## ISSUES

¶6.    Bell raises the following issues, which have been restated for clarity:

I.    Whether the trial court erred in its comments to a deadlocked jury.

II.    Whether Bell received ineffective assistance of counsel.

## ANALYSIS

3

**I.      Whether the trial court erred in its comments to a deadlocked jury.**

¶7.     This Court has found "the possibility of coercion, if any, lies in the trial judge's conduct and comments after he receives the division [of the jury], that is, whether the judge merely affords the jury additional time to deliberate or [w]hether he attempts to force a verdict by suggestive comments or coercive measures." *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976). "If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: 'Please continue your deliberations,'" or the judge may state:

> I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so. Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

*Id. See also Lafayette v. State*, 90 So. 3d 1215, 1217-18 (Miss. 2012).

¶8.     "There are two instructions which properly may be given to a deadlocked jury." *Edlin v. State*, 523 So. 2d 42, 44 (Miss. 1988). Neither intimates to the jurors that the court "would like" a unanimous verdict or that they have a "purpose" and a "job" to render a unanimous verdict; nor does either stigmatize a dissenting juror as "stubborn." On the contrary, the latter *Sharplin* alternative cautions a juror "not [to] surrender your honest convictions as to the

4

weight or effect of the evidence solely because of the opinion of your fellow jurors *or for the mere purpose of returning a verdict*.” ***Sharplin***, 330 So. 2d at 596 (emphasis added).

> These issues arise in cases in which the jury is slow to agree. Anxious for [guidance], jurors are especially likely to rely on supplemental communications[,] thus magnifying the effect of an improper message from the court. These errors need not occur at all—ever. ***Sharplin*** very clearly delineated the two proper charges a judge could give to a deadlocked jury.

***Edlin***, 523 So. 2d at 45. *See also* ***Brantley v. State***, 610 So. 2d 1139, 1142 (Miss. 1992) (“The procedure we set forth in ***Edlin*** and ***Sharplin*** for instructing a deadlocked jury is clear and unambiguous. The trial judge’s departure from the guidelines of ***Edlin*** and ***Sharplin*** is clear error.”).

¶9.　　The strictures of ***Sharplin*** are necessary because “[a] trial judge has great credibility with the jury, and the potential of coercion and influence is too great.” ***Lafayette***, 90 So. 3d at 1219. *See also* ***Folk v. State***, 576 So. 2d 1243, 1251 (Miss. 1991) (“It is common knowledge that jurors carefully attend the trial judge’s every action. His position of authority, respect and neutrality give him peculiar power to influence.”). The trial judge’s deviation in the case *sub judice* requires reversal.

> All the authorities hold that, if they [the jurors] were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.

***Edlin***, 523 So. 2d at 45.

¶10.　***Sharplin*** curbs loose language from a trial judge which may have an unwitting coercive effect or influence on a juror. Without assigning an impermissible intent to the trial judge, we find his comments to the jurors before sending them back for further deliberations

5

could be interpreted as improperly coercive and designed to produce a verdict. Therefore, we reverse Bell's conviction and remand for a new trial.

## II. Whether Bell received ineffective assistance of counsel.

¶11. Bell argues he received ineffective assistance of counsel because his trial counsel failed to investigate, subpoena, and call a treating physician to testify to and corroborate Bell's theory of defense that his medical impairments rendered him unable to form the requisite intent to rob the bank. To succeed on an ineffective-assistance-of-counsel claim, the defendant must show that (1) his counsel's performance was deficient, and (2) that this deficiency prejudiced his defense. *Puckett v. State*, 879 So. 2d 920, 935 (Miss. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

¶12. Because appellate courts are limited to the trial record on direct appeal, "generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015). This Court addresses ineffective-assistance-of-counsel claims on direct appeal only where "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983). However, "[s]hould the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot." *Id.*

¶13. As we reverse on other grounds, the ineffectiveness issue is rendered moot.

## CONCLUSION

6

¶14. The trial judge's comments to the jurors before sending them back for further deliberations were impermissibly suggestive and capable of being interpreted as coercive. Therefore, Bell's conviction is reversed, and the case is remanded to the Quitman County Circuit Court for a new trial. Because we reverse and remand on that issue, Bell's ineffective-assistance claim is moot.

¶15. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**