# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00282-COA

**AMOS HENRY EDWARDS A/K/A AMOS EDWARDS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:              02/16/2017
TRIAL JUDGE:                   HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:     SCOTT COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: HUNTER N. AIKENS
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:             MARK SHELDON DUNCAN
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED: 02/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Amos Henry Edwards was convicted of sexual battery and sentenced to twenty-five years, with five years suspended, leaving twenty years to serve in the custody of the Mississippi Department of Corrections, followed by five years of supervised probation. Edwards was ordered to register as a sex offender and to pay all court costs and fees. Following the denial of his post-trial motion, Edwards appeals.

¶2.     The only issue Edwards has raised is that he received ineffective assistance of counsel. Edwards's ineffective-assistance-of-counsel claim is more appropriate for a post-conviction

proceeding; therefore, we affirm.

FACTS AND PROCEDURAL HISTORY

¶3.     In April 2016, Edwards was eighteen years old.  He lived in an apartment with his father, his father's girlfriend, Pamela, and Pamela's seven-year-old grandson, Trey.[1]  Trey testified that, on April 22, 2016, he went into Edwards's bedroom and asked Edwards to play. Edwards was on the bed taking pictures of himself with his cell phone.  Edwards told Trey, "first [you've] got to do this and then we can play, the middle spot."  In other words, Edwards told Trey to "suck on that, the middle spot."  Edwards then took off his clothes, grabbed Trey's head, and put Trey's head under the covers.  Trey testified that Edwards's penis went inside his mouth for "a short time," until Pamela walked into the room.

¶4.     Pamela testified that she went into Edwards's bedroom and saw Edwards in the bed with one hand in the air holding a cell phone and the other hand under the covers holding Trey's head down around Edwards's private area.  Pamela called Trey's mother and the police.

¶5.     Morton police officer Willie Anderson responded to the call.  Pamela testified that as Anderson was escorting Edwards out of the apartment, Edwards said, "I'm sorry for what I did.  I don't know what happened. . . . I'm sorry."  Anderson confirmed that Edwards said he was sorry for what he did and that he knew better.

¶6.     On April 27, 2016, Investigator Marcus McDougle interviewed Edwards.  Edwards signed a waiver-of-rights form that stated he understood his rights and wished to speak with

---

[1] For privacy purposes, we use a fictitious name for the victim.

2

McDougle. At the time of the interview, Edwards had been in custody for five days without an initial appearance or a bond. Edwards then provided the following written statement:

> On Friday night, [m]e and Trey was in my room on [Y]outube looking up music video[s]. I don't know what I was thinking, but I really didn't mean it. I wasn't in my right mind. I know I shouldn't [have] done [that]. But it only happen[ed] one time. I'm sorry for doing that. That's the honest truth. I'm sorry to say this but he put his mouth on me (on my thing), only one time. He d[id] it once th[e]n I told him to stop and he did. That's all of it. I promise.

Shortly after the interview, Edwards appeared before a judge for an initial appearance and was granted a bond.

¶7.     Edwards moved to suppress the written statement. At the suppression hearing, McDougle testified that he and Edwards were present for the statement. According to McDougle, Edwards appeared to understand his rights, did not appear to be under the influence of drugs or alcohol, did not advise of any learning disability, and never requested an attorney or asked to stop the interview. McDougle also testified that he did not make any threats or promises of a reward or leniency, and denied telling Edwards that he would be better off if he gave a statement. McDougle acknowledged that Edwards had been in custody for five days and had not been given an initial appearance or a bond. McDougle explained that he was working a murder case and was unable to interview Edwards immediately after the incident. McDougle denied using the hope of bond in exchange for Edwards's statement. Instead, McDougle advised Edwards that "this was his time to say his piece, say what he had to say, and that he was — that the judge would be talking to him shortly."

¶8.     After McDougle testified, Edwards's trial counsel did not call Edwards to testify. Instead, Edwards's counsel argued that because Edwards had been in custody for five days

3

without a bond, he "felt the need to make a statement at that point just to perhaps get out of custody." The circuit court disagreed and found that Edwards's statement was voluntary, and overruled the motion to suppress. The circuit court ruled:

> It's the testimony of Investigator McDougle that what's been marked for ID as Exhibit 1 was a sheet that he went over individually, the *Miranda* rights. At the juncture concerning [his] right to remain silent, he indicated that it was the defendant, Edwards, [who] affixed his initials to the yes blank; that he understood his right to remain silent. He also explained that as he went through each number, he made these inquiries, and that at each juncture Edwards indicated he understood. The form reflects that on whether he understood he had the right to speak to an attorney, also he indicated yes and affixed his initials. And then finally if any threats or promises have been made to you, that he indicated no and affixed his initials. And then finally in the last question, "Do you wish to talk to me now," and he affixed his initials in the yes blank. [McDougle also testified] that there were no promises, threats, violence rendered toward[] him; that there were no promises of reward or any inducements offered to him. His explanation was that the defendant, Edwards, seemed eager to speak with him, to make a statement, to volunteer information.
>
> In short, what I have heard is that Mr. Edwards was properly advised of his rights and that he elected to make a voluntary statement. As to the issue as to whether he understood, the testimony is that the statement actually is in his handwriting and that at the incidences where there is some language that's been crossed out, it was Edwards [who] affixed his initials in those spots also. So I believe we have here a voluntary, willing, intelligent statement, so the objection is overruled.

¶9. At trial, the waiver of rights and the written statement were admitted into evidence and presented to the jury. McDougle testified about his interview with Edwards and explained the five-day delay between Edwards's arrest and his written statement. Although McDougle acknowledged that he "made indications that the judge was there," McDougle denied telling Edwards that he would be given an initial appearance or a bond if he provided a statement.

¶10. Edwards testified in his own defense at trial. Edwards testified that on the night in

4

question, he was on his cell phone, listening to music, and texting his girlfriend. Trey came in and said that Pamela told him that he could sleep in Edwards's room. Edwards testified that Trey was "acting kind of funny." Then Edwards testified that Trey crawled up from the end of the bed, "started going kind of in [his] area, like [his] middle part area," and touched him on the thigh. At that point, Edwards threw both his phone and Trey against the wall. Shortly thereafter, Pamela walked into the room.

¶11. Edwards denied taking off his clothes. He also denied touching Trey or putting his penis in Trey's mouth. Edwards acknowledged that he was escorted out of the apartment by the police, but he denied making any statement that he was sorry for what had happened.

¶12. Edwards was then asked why he wrote the statement. Edwards said that he "felt like [he] was forced to write it." Edwards testified that McDougle advised him of what Pamela and Trey had alleged and told him that he "might as well just write . . . what they said about all of that and everything w[ould] be good and that he w[ould] try and help [him]." Edwards claimed that he felt that he would stay in jail longer if he did not admit to the allegations. However, Edwards asserted that was simply how he felt and he did not make such a statement.

¶13. In addition, Edwards claimed that McDougle told him what to say and write in the statement. Edwards testified that "most of this is what he told me to write. . . . I just put it in my words, not his." With regard to the last sentence of his written statement, "[t]hat's all of it, I promise," Edwards testified as follows:

Q. Did you write that or did he?

5

A. I wrote everything he said, so I basically told him I promise I wrote what he said.

Q. You promise you wrote what he said?

A. Yeah. That's everything he told me basically to say.

Q. Oh, so that's what you were promising to?

A. Yeah.

Q. Not to the actual —

A. No.

Q. — truth of your statement?

A. Not on my — but I did — I did sign it, though. Because he told me to sign it, so, you know . . . .

¶14. Following his conviction, Edwards's motion for a new trial was denied. Edwards timely filed an appeal.

ANALYSIS

¶15. Edwards claims his trial counsel failed to competently challenge the voluntariness and admissibility of his written statement to McDougle. Edwards admits the State established a prima facie case of voluntariness through McDougle's testimony. However, Edwards argues his counsel "fail[ed] to investigate and present evidence at the suppression hearing to rebut the State's prima facie case that [his] written confession was voluntary." Specifically, Edwards argues that his attorney was deficient for failing to call him as a witness during the suppression hearing. Edwards claims that if his trial counsel had called him to testify at the suppression hearing, he would have testified to the following: (1) his

6

written statement was taken during a period of unreasonable delay, (2) he suffers from autism and attended special-education classes in school, and (3) his statement was coerced by offers of inducement and hopes of reward.

¶16. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citation omitted). An ineffective-assistance-of-counsel claim can be addressed on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016).

¶17. Here, a review of the record does not affirmatively show ineffectiveness of constitutional dimensions. Additionally, although Edwards stipulates that the record is adequate, the State does not. Moreover, Edwards's ineffective-assistance-of-counsel claim is based on facts not fully apparent from the record. Accordingly, we are unable to adequately and properly address the claim on direct appeal. *See Dartez*, 177 So. 3d at 423 (¶18) (We may address an ineffectiveness claim on direct appeal "if the presented issues are based on facts fully apparent from the record."). As a result, we affirm the circuit court's judgment while preserving Edwards's right to pursue his claim through an application for the Mississippi Supreme Court's leave to file a petition for post-conviction collateral relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

¶18. **AFFIRMED.**

7

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**