# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00132-COA

**IRA JOSEPH CLAYTON A/K/A IRA CLAYTON**        **APPELLANT**
**A/K/A IRA J. CLAYTON A/K/A IRA WILSON**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2017 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA M. AINSWORTH |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 11/27/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1.    Ira Joseph Clayton appeals his conviction of the unlawful possession of a motor vehicle and argues there is insufficient evidence to support the conviction and the verdict is against the overwhelming weight of the evidence. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    In March 2017, Clayton moved in with his girlfriend, Rikiesha Williams, at her apartment in Southaven. Williams owned a 2012 Volkswagen Jetta. Since Clayton did not have a vehicle, he would use Williams's car.

¶3. On the morning of May 26, 2017, Clayton and Williams went to Memphis for an appointment and subsequently returned to Southaven. Clayton drove them to and from the appointment in Williams's car.

¶4. When they returned home, Clayton and Williams got into a series of arguments. During the second argument, Williams told Clayton she no longer wanted to be in the relationship and asked him to pack his belongings and leave. Clayton began to pack but subsequently left the apartment and walked to Williams's aunt's house.

¶5. Approximately two to three hours later, Clayton called Williams and asked her to come pick him up so he could get the rest of his belongings. Williams agreed. When they returned to Williams's apartment, Clayton and Williams got into another argument. During the physical altercation, a gun discharged and Williams was shot twice, once in her right leg, and once in her left leg. Williams's phone was also broken.

¶6. Following the shooting, Clayton grabbed Williams's car keys and left the apartment complex in Williams's car. According to Williams's neighbor, Queen Rice, Clayton ran out of the apartment to the car, jumped in, and sped off.

¶7. Clayton was indicted as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015) on Count 1, possession of a weapon as a convicted felon; Count 2, aggravated assault; and Count 3, unlawful possession of a motor vehicle. Clayton was convicted of Count 3 only. The jury was unable to reach a unanimous verdict as to Count 1, and found Clayton not guilty on Count 2. Clayton was sentenced as a habitual

offender to serve ten years in the custody of the Mississippi Department of Corrections, to run consecutively to any current sentence. He was further ordered to pay a $1,000 fine and $503.83 in restitution to the Southaven Police Department. Clayton subsequently filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the circuit court denied.

¶8. Clayton timely appealed. Clayton's appellate counsel filed a brief and raised the following assignments of error: (1) the evidence is insufficient to support the conviction of unlawful possession of a motor vehicle, and (2) the verdict is contrary to the weight of the evidence. Clayton filed a pro se supplemental brief and asserted eight additional assignments of error. We separately address each issue.

ANALYSIS

*I. Sufficiency of the Evidence*

¶9. Clayton first argues the evidence is insufficient to support his conviction of the unlawful possession of a motor vehicle. In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 35 So. 3d 480, 485 (¶16) (Miss. 2010) (citation omitted). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy

3

is for the appellate court to reverse and render." *Id*. (citations omitted). However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient." *Id*. (citations omitted).

¶10.    Pursuant to Mississippi Code Annotated section 97-17-42(1), it is unlawful for "[a]ny person [to] willfully and without authority, take possession of or take away a motor vehicle of any value belonging to another . . . ." Clayton argues there is insufficient evidence to show that he took possession of Williams's vehicle "without authority." He claims that because he shared the vehicle with Williams and Williams had not revoked his permission to use the vehicle, he had the authority to take possession of the vehicle following the shooting. We disagree.

¶11.    The record shows Williams and Clayton had been fighting throughout the day. Williams told Clayton she no longer wanted to be in the relationship and asked Clayton to get his stuff and leave. Clayton began to pack up his belongings and eventually left the apartment. Importantly, when Clayton left Williams's apartment, he did not take the car. Instead, Clayton walked. Clayton subsequently called and asked Williams to come pick him up so he could get the rest of his belongings.

¶12.    Following the shooting, Clayton did not leave on foot, as he had done earlier that day. Instead, he grabbed Williams's car keys and took her car. Thus, although Clayton had previously left the apartment on foot, it was only after Williams had been shot twice and her

4

phone broken during the altercation that Clayton grabbed the keys and took the car.

¶13. Although Williams explained that she and Clayton shared her car, Williams specifically testified that she did not give Clayton permission to take her car on that day. Williams subsequently advised the police that they could call the financial company to try to locate Clayton in the vehicle.

¶14. Considering the evidence in the light most favorable to the State, we find sufficient evidence was presented to support Clayton's conviction of the unlawful possession of a motor vehicle. Thus, Clayton's motion for a JNOV was properly denied.

II. *Weight of the Evidence*

¶15. Clayton next argues the verdict is against the overwhelming weight of the evidence. "In reviewing the denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Kirk v. State*, 160 So. 3d 685, 697 (¶31) (Miss. 2015) (citation and internal quotation marks omitted). The evidence is weighed in the light most favorable to the verdict. *Id*. "A new trial should be granted on the basis of the weight of the evidence 'only in exceptional circumstances, when the evidence weighs heavily against the jury's verdict.'" *Hughes*, 983 So. 2d at 277 (¶22) (quoting *Wilson v. State*, 936 So. 2d 357, 363 (¶16) (Miss. 2006)).

¶16. Clayton asserts the verdict is contrary to the weight of the evidence "because the [S]tate failed to show a lack of authority to use Williams's vehicle." However, the record

5

shows the jury heard all of the testimony and resolved any conflicts in the evidence. *See Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011) ("Conflicts in the evidence are for the jury to resolve."). "Any factual disputes [we]re properly resolved by the jury and do not mandate a new trial." *Sneed v. State*, 31 So. 3d 33, 43 (¶33) (Miss. Ct. App. 2009) (quoting *Moore v. State*, 859 So. 2d 379, 385 (¶26) (Miss. 2003)).

¶17. Having considered the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Accordingly, the circuit court did not err in denying Clayton's motion for a new trial.

### III. Ineffective Assistance of Counsel

¶18. Clayton further argues he received ineffective assistance of counsel. Specifically, Clayton claims his trial counsel was ineffective for: (1) "not showing the routine habit of . . . Williams fighting and [accus]ing Clayton of messing with other women," (2) not objecting to Williams's failure to identify her live-in cousin, (3) "not demanding a medical expert's testimony [regarding the] hospital treatment of [Williams] [or] any medical records of [Williams]," (4) not objecting to the instructions regarding a directed verdict, and (5) "not objecting to [the] Southaven police officer['s] [failure to] giv[e] [a] gunshot residue test."

¶19. To prove ineffective assistance of counsel, Clayton must show: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We look at the totality of the

6

circumstances to determine whether counsel's [performance was] both deficient and prejudicial." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). "[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." *Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013). "Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient." *Dartez*, 177 So. 3d at 423 (¶19).

¶20. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016). This Court may address "ineffective-assistance-of-counsel claims on direct appeal only where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.*

¶21. The record does not affirmatively show ineffectiveness of constitutional dimensions. Additionally, there is no stipulation by the parties that the record is adequate to address this claim. In fact, the State asserts that "[Clayton's] claims are not ripe for direct appeal." Thus, we are unable to adequately and properly address Clayton's ineffective-assistance-of-counsel claim on direct appeal. We therefore deny this issue without prejudice to afford Clayton the option to pursue his claim in a post-conviction proceeding. *See Williams v. State*, 228 So.

7

3d 949, 952-53 (¶14) (Miss. Ct. App. 2017) ("[Appellant]'s ineffective-assistance-of-counsel claim is more appropriately brought during postconviction proceedings, and we therefore deny relief without prejudice as to [his] right to pursue this claim during postconviction proceedings.").

### IV. Brady Violation

¶22. Clayton next argues the circuit court violated *Brady v. Maryland*, 373 U.S. 83 (1963) by refusing to admit into evidence a post from Williams's social-media page. In the social-media post, Williams stated that she had recently considered suicide and had "picked up a gun and almost ended her life." Clayton claims the post "shows that [Williams] had an altered mental state" and was "a danger to herself [and] the people around her . . . ."

¶23. In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. Thus, pursuant to *Brady*, suppression of material evidence by the prosecution, not the circuit court, violates due process.

¶24. Here, there is no evidence of a *Brady* violation by the State. The transcript shows the State did not suppress the social-media post or information regarding the post. In fact, the transcript makes clear that Clayton was aware of the social-media post and provided a copy of it to the prosecution prior to trial. As Clayton fails to show that the State suppressed material evidence, his claim regarding an alleged *Brady* violation is without merit.

8

¶25. Assuming Clayton intended to argue that the circuit court erroneously excluded the social-media post on other grounds, he fails to state those grounds or cite any case law in support thereof. "[A]n appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the [circuit] court and timely preserved." *Byrom v. State*, 863 So. 2d 836, 853 (¶35) (Miss. 2003). "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Id.*

### V. Inconsistent Testimony

¶26. Clayton next argues "that the testimony of State's witness Queen Rice was inconsistent and perjured." "The credibility of witness testimony is the province of the jury." *Doe v. Stegall*, 900 So. 2d 363, 366 (¶15) (Miss. Ct. App. 2003). "[T]he jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony." *Id.* at 367 (¶15). Thus, any inconsistent statements made by Rice were matters for the jury to determine. *Id.*

### VI. Medical Expert Testimony

¶27. Clayton further argues the State "erred in not having a doctor give an opinion of the angle of the gunshot wounds." However, Clayton was convicted of the unlawful possession of a motor vehicle, not aggravated assault. Clayton fails to show how such opinion testimony is relevant to his conviction. Accordingly, this issue is without merit.

### VII. Directed Verdict

¶28. Clayton next argues the circuit court "erred in not giving instructions for a directed verdict." "A directed verdict, judgment notwithstanding the verdict[,] and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial." *Woods v. State*, 242 So. 3d 47, 54 (¶24) (Miss. 2018). For reasons already discussed, we find sufficient evidence was presented at trial to support Clayton's conviction. Thus, the circuit court did not err in denying Clayton's motion for a directed verdict and motion for a JNOV, nor did it err in refusing to give a peremptory instruction.

*VIII.    Sharplin Instruction*

¶29. During its deliberations, the jury sent a note to the circuit court stating, "We are unable to reach an unanimous agreement on Counts 1 and 2." Over defense counsel's objection, the circuit court gave an instruction pursuant to *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976). Clayton argues the circuit court "erred in trying to make the jury members return a guilty verdict against [him]." We disagree.

¶30. Pursuant to *Sharplin*, if the circuit court feels that there is a likelihood that the jury might reach a verdict, it may return the jury for further deliberations. *Id*. Here, the record shows that the jury had deliberated less than two hours regarding a multi-count indictment and had reached a verdict as to Count 3. Because there was a likelihood that the jury would reach a verdict on the two remaining counts, the circuit court did not err in instructing the jury to continue its deliberations.

¶31. Additionally, as previously noted, the jury had reached a unanimous verdict as to

10

Count 3; thus, the *Sharplin* instruction was given as to Counts 1 and 2. Clayton was convicted of Count 3 only. Therefore, even if the circuit court erred in giving a *Sharplin* instruction, no prejudice resulted, as the *Sharplin* instruction did not affect the charge on which Clayton was convicted.

IX. *Indictment*

¶32. Clayton was indicted as a habitual offender pursuant to section 99-19-81. Clayton argues the "indictment was erroneous when the State only used one conviction, the 1995 aggravated assault conviction[,] and did not inform the defen[s]e of the second conviction being . . . robbery until the sentencing phase of the trial . . . ." Clayton asserts that as a result of this error, his constitutional rights to due process and equal protection were violated.

¶33. The indictment clearly includes both of Clayton's prior convictions. Thus, Clayton had notice of the habitual-offender charge and the basis of the charge. Accordingly, this issue is meritless.

X. *Police Report*

¶34. During deliberations, the jury sent a note to the circuit court requesting a copy of the police report. With no objection by the State or Clayton, the circuit court responded and advised the jury that it "ha[d] all the evidence [it] w[ould] receive in the case." Clayton last argues the circuit court erred when "it refused to let the jury examine [the] police report after [the] jury sent a note . . . asking for it." In support of his argument, Clayton relies on *U.S. v. Bagley*, 473 U.S. 667 (1985). However, Clayton's reliance on *Bagley* is misplaced.

11

¶35. As previously discussed, pursuant to *Brady*, the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment. *Brady*, 373 U.S. at 87. In *Bagley*, the Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

¶36. Here, Clayton does not allege, and there is no evidence to suggest, that the police report was suppressed or withheld by the prosecution. Thus, neither *Brady* nor *Bagley* apply.

¶37. Moreover, the record reflects that the police report was not admitted into evidence at trial. Instead, an officer and an investigator with the Southaven Police Department testified regarding the incident between Clayton and Williams. Since the police report was not admitted into evidence, the circuit court's response to the jury was proper.

¶38. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**