# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01461-COA

ADRIAN MOORE A/K/A ADRIAN ORVILLE          APPELLANT
MOORE A/K/A ADRIAN O. MOORE

v.

STATE OF MISSISSIPPI          APPELLEE


| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2014 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MURDER, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCED TO LIFE IMPRISONMENT FOR COUNT I, AND TWENTY YEARS FOR COUNT II, WITH BOTH SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 03/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.   Adrian Moore was indicted on October 27, 2013, for Count I, murder, and Count II,

aggravated assault.   After a jury trial, he was convicted in Jackson County Circuit Court on

both counts and sentenced to life imprisonment for Count I, and twenty years for Count II, with the sentences to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). Moore's post-trial motions were denied by the trial court, and he now appeals. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 20, 2013, Alfred Durden and his brother, Hardy Parker, were leaving a night club in the early morning hours. Crossing a vacant parking lot, Durden recognized Moore standing in a wooded area nearby. Moore immediately started shooting at the two men. The first shot narrowly missed Durden, hitting Parker, who was walking five feet behind Durden. Parker fell to the ground. Durden, pretending to be shot, lay down on the ground. Moore walked over and shot Parker in the head. Moore then stood over Durden, and shot him in the back of the head. Fortunately, the bullet exited through Durden's neck, and he survived the shooting. Parker, however, died from his injuries.

¶3. Moore left the scene, and Durden went to find assistance. He knocked on the door of a nearby apartment, where his friend lived. Nathan Holmes, the friend's brother, answered the door. Holmes assisted Durden by calling 911. Holmes testified at trial that Durden told him in a subsequent private conversation that Moore was the shooter. Officer Dale Gordon testified that when he arrived and questioned Durden at the scene, Durden told him "Adrian" had shot him.[1]

---

[1] There was some confusion after the shooting regarding Moore's last name. When questioned at the scene, Durden told Officer Gordon that "Adrian Berry" shot him. Durden said that although he knew Moore, he was not familiar with his last name. Officer Gordon, however, knew to whom Durden was referring and confirmed with Durden that it was

¶4. Moore was arrested, and a search of his residence revealed several types of bullets and a tan skull cap. Moore's clothing was collected for DNA testing; blood found on his jeans was a positive DNA match with a known sample of Parker's blood.

¶5. Moore was indicted for Count I, murder, and Count II, aggravated assault. A jury trial was held on July 21-25, 2014. Although the jury was initially deadlocked, after further deliberation, it reached a unanimous guilty verdict. Moore was convicted on both counts and sentenced to life imprisonment for Count I and twenty years for Count II, with the sentences to run consecutively in the custody of the MDOC.

¶6. Moore filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. Moore also requested a hearing under Mississippi Rule of Evidence 606, claiming the trial judge pressured the jurors to change their decision after the jury indicated it was deadlocked. Moore subsequently filed an amended motion for a JNOV, a motion to compel production of jury questionnaire responses, and a motion for spoliation presumptions to apply due to intentional destruction of material evidence. A hearing on the motions was held on September 3, 2014. Moore argued that the trial judge's reading of the *Sharplin* instruction put pressure on the jury to reach a unanimous verdict and "scared the non-guilty jurors."[2] The trial court denied Moore's motions on September 4, 2014.

## DISCUSSION

Moore.

[2] *See Sharplin v. State*, 330 So. 2d 591 (Miss. 1976).

**I.** **Whether the trial court abused its discretion in denying the defense's motion for a mistrial after the jury indicated it was deadlocked.**

¶7.    At the close of arguments, the trial judge sent the jury out for deliberations at approximately 11:45 a.m.  Sometime before 3:45 p.m., the jury sent a note to the judge indicating it was deadlocked.  The jury was brought back into the courtroom, where the following exchange took place:

THE COURT:    I understand from the note that there is a division among the jury.  Listen very carefully to the question.  I do not want to know for conviction, not for conviction.  I just want to know the numerical break.  Do you understand the question?

THE FOREMAN:    Numerical; yes, sir, I do.

THE COURT:    So tell me the numerical division, please.

THE FOREMAN:    10 to 2.  10 guilty.

THE COURT:    No.  I don't want to know anything other than the numerical break, 10 to 2.

The judge then issued a *Sharplin* instruction to the jury, stating:

The verdict of the jury must represent the considered judgment of each juror.  In order to return a verdict in this case, it will be necessary that each juror agree thereto.  In other words, all [twelve] jurors must agree on any verdict in this case.  It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence and the instructions of law, and after consultation with your fellow jurors.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced that it is erroneous; but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of

4

returning a verdict. I'm going to send you back to deliberate further.

Sometime prior to 6:11 p.m., the jury sent a second note to the trial judge, indicating it was still deadlocked. The jury was brought back into the courtroom and the judge asked for the numerical split. Again, it was noted that the split was 10 to 2, and the court asked the following:

THE COURT: Do you believe further deliberation would help?

THE FOREMAN: No, sir, I do not.

THE COURT: Do you believe that going home overnight and coming back would help?

THE FOREMAN: I don't see where it could hurt.

The State agreed to release the jury for the evening, but defense counsel argued that it was "clear that this is the jury's sound honest judgment," and he moved for a mistrial. The trial judge questioned each juror if he/she thought it would help to adjourn for the night and come back in the morning. All jurors indicated that it might help, so the court excused the jury for the evening. The following day, after a couple of hours of further deliberation, the jury returned a unanimous verdict of guilty.

¶8. Moore contends that the trial court deprived him of a fair trial when it sent the jury home, allowing them to finish deliberations the following morning. He claims that this action "put pressure on the jurors to reach a verdict in the case," and he requests that this Court reverse his convictions and remand for a new trial, as the court abused its discretion in denying defense counsel's motion for a mistrial and "in pushing the jury to deliberate further."

¶9.   We find nothing in the record to indicate that the trial court pressured or coerced the jurors.  Although the judge asked the foreman for the numerical division of the vote, a "trial judge's knowledge of the numerical division is not error; instead, an appellate court should consider 'the trial judge's conduct and comments after he receives the division, that is, whether the judge merely affords the jury additional time to deliberate or whether he attempts to force a verdict by suggestive comments or coercive measures.'" *Williams v. State*, 40 So. 3d 630, 636 (¶22) (Miss. Ct. App. 2010) (quoting *Sharplin,* 330 So. 2d at 596).  After receiving the *Sharplin* instruction, the jury continued its deliberations until it reached a unanimous verdict.  There is no evidence that any statement from the trial judge coerced the jury to return with a guilty verdict.  In fact, when asking the jurors if they thought going home would help, the judge reassured the jurors, "Nobody is trying to put you on the spot." We find no merit to Moore's claim.

II.   **Whether the trial court erred in refusing to allow the defense to make a record regarding testimony the trial court ruled as inadmissible.**

¶10.   Moore argues that on two occasions during the trial, the trial court erroneously prevented him from making a record of testimony that the court had excluded.  In the first instance, during defense counsel's questioning of Officer Darren Versiga regarding the events of the murder, counsel referenced a prior incident involving Moore.  In the motions hearing prior to trial, the State had noted that there was "an issue regarding the manner in which [Moore] was identified."  Moore had confessed to shooting Jackie Davis in 2010, claiming it was self-defense and that Davis was trespassing on his property.  When police

6

questioned Durden, a victim in this case, he identified Moore as the shooter, telling police that it was the same man who shot Davis.

¶11. However, when defense counsel attempted to ask Officer Versiga if he was familiar with the *Davis* case, the State objected, stating the facts of that case were not relevant, except with respect to the fact that Moore admitted to shooting Davis. The court sustained the objection. Out of the presence of the jury, defense counsel moved to allow the evidence, as it could involve motive.

> [DEFENSE COUNSEL]: Your Honor, this witness interviewed the defendant, he interviewed the victim. He was one of the investigators involved in the Jackie Davis case. . . . It remains an unresolved case. There was evidence that was misplaced in that case, and it very well could go to the motive – any kind of motive or thing that touches on the character or credibility of the witness goes into play. If this witness is involved in the Jackie Davis case, and there's some kind of perceiving problem as to whether or not justice has been circumvented, at least in the mind of the witness, and that witness collected evidence, that witness has given opinions about the statement, both in direct and on cross, and this is the same defendant in both cases. If he feels, or if there's a reasonable belief that the witness could feel[,] that there is some injustice in that case, and that maybe [Moore] got away with something he shouldn't have, then it would go to the credibility of the witness and affect him, and then that would make it relevant.
>
> . . . .
>
> But if this witness was the investigator on that case, if he was involved in the handling of the evidence, the evidence has now disappeared. . . If that loss of evidence somehow impacts the ability

7

of law enforcement to solve that case, . . . maybe they feel that there's some kind of, in their minds, an injustice that exists, because of an unsolved case, or inability to solve the case[.] . . . . And maybe there's a willingness or a desire to solve, or to put somebody in jail and keep somebody in jail who they may think got away with another case[.]

The trial court determined that since nothing had been ruled upon in the *Davis* case, he would not allow any questioning regarding that issue. Defense counsel asked once more during cross-examination "to go into that area that we talked about," but the trial judge refused to allow it.

¶12. The second instance that Moore contends was reversible error occurred during the cross-examination of Officer Kim Stevens. Defense counsel asked the trial court to allow him to introduce evidence of a recording of Durden's statement to police, and play it for witness Stevens. The trial court allowed him to make a proffer outside the presence of the jury.

| THE COURT: | You said you wanted to make a proffer. Please make it. Let me know when you begin and when you end. |
|---|---|
| [DEFENSE COUNSEL]: | Yes, sir. Your Honor, with respect to the proffer, one of the many CDs that we have, has Investigator Versiga talking to – Your Honor, instead of doing it this way, if I may, can I just play the tape for the witness while she's here? |
| THE COURT: | For what purpose? |
| [DEFENSE COUNSEL]: | I want to establish that in her presence of her investigation, that Investigator Versiga was – that both of them were at the bedside, and Investigator |

Versiga says, we are not against you. Whatever happened in your past with respect to the police department and the police officers, regardless of anything that you were arrested for, whether I arrested you in the past, that does not matter now. Now, you are the witness in this case, and we want you to help us – we want you to help us solve the crime. Now, those are his words in her presence.

And immediately prior to that, they made a point out of everything that came out of the mouth of the witness, especially Investigator Versiga, tried to tie it into [Moore]. If he said that [Eddie] Dupre had dope, he would make the point that, well, did he sell – is he a supplier to [Moore], or did [Moore] sell to him; or as far as the guys coming out to kill, did Dupre tell [Moore] to kill you, or did he tell you [sic] not to kill you? Was he a member of the gang? And he said [Moore] was going – he's going to trial in a few days, and he's going to get 20 years. And basically it was clear – unequivocally clear that Versiga wanted to convict [Moore].

THE COURT: Did you just read that verbatim what Officer Versiga just said? Is that what he said specifically?

[DEFENSE COUNSEL]: The words I used are pretty – I mean, it may be a –

THE COURT: You've made your record. I'm going to excuse this lady.

[DEFENSE COUNSEL]: Could I – I'd like to make the CD as an exhibit.

THE COURT: You can make it for purposes of ID only.

[DEFENSE COUNSEL]: Yes, sir. That's what I wanted.

Thus, as in the first instance, defense counsel stated that his purpose was to show motive on

the part of law enforcement to implicate Moore in the present crime. Although Moore acknowledges that the trial court allowed defense counsel to make a proffer of the evidence outside the jury's presence, he claims it was error for the court not to allow defense counsel to question Stevens regarding the recording.

¶13. To support his claims of error, Moore cites *Kidd v. State*, 258 So. 2d 423, 428 (Miss. 1972), a case in which the Mississippi Supreme Court held:

> The failure of the trial judge to permit counsel for the appellant to make his record in this cause is a grievous error. Regardless of whether or not the testimony is irrelevant, immaterial and unnecessary, the defendant and the state have the sacred right of appeal to this Court. The corollary thereof is the right to make their respective records and no court should deny a litigant the right to make his record so that we will have before us all issues of fact as well as issues of law for review. This in itself is error sufficient to justify a reversal of this case. *Hitt v. State*, 217 Miss. 61, 63 So. 2d 665 (1955).

¶14. Subsequently, in *Priest v. State*, 275 So. 2d 79, 82 (Miss. 1973), the supreme court held:

> [T]he rule is that when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, *or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the offerer*.

(Emphasis added) (quoting *Martin v. Gill*, 182 Miss. 810, 181 So. 849 (1938)). Counsel has a right "to show in the record by appropriate means the nature and conduct of the excluded testimony, and when the offer is properly made to preserve the record of such testimony and that offer is refused, then it is reversible error." *Id*. "The right to preserve testimony through

10

an appropriate offer of proof is essential to insure justice and fairness." *Jones v. State*, 306 So. 2d 57, 59 (Miss. 1975).

¶15. However, none of these cases state that the trial court must allow the witness to testify in order to preserve the record. Rather, the supreme court has held that when a trial court does not permit counsel to present a witness's testimony, he "must by some manner or means cause the record to show precisely what he intended to prove by the witness." *Bell v. State*, 443 So. 2d 16, 20 (Miss. 1983). In *Pennington v. State*, 437 So. 2d 37, 39 (Miss. 1983), the supreme court concluded no reversible error had occurred because counsel was permitted to state "the purpose of the evidence" he sought to introduce.

¶16. The record indicates that the trial court afforded Moore an opportunity to make his record. In the first instance, defense counsel was permitted to state what he thought his questioning of Officer Versiga regarding the Davis case might demonstrate. In the second instance, he stated what the recording would show. He was also allowed to enter the CD into evidence for identification purposes. Accordingly, we find this issue is without merit.

¶17. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF LIFE IMPRISONMENT FOR COUNT I, AND TWENTY YEARS FOR COUNT II, WITH BOTH SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**