# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01300-COA

**KUREN CORDELL KEYS A/K/A KUREN KEYS A/K/A KUREN K. KEYS A/K/A KUREN KORDELL KEYS A/K/A KURRELL CORDELL KEYS**                                                       APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/2015 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF SEXUAL BATTERY AND SENTENCED TO CONSECUTIVE TERMS OF FIFTEEN YEARS AND THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 05/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     A jury in the Harrison County Circuit Court convicted Kuren Kordell Keys of two counts of sexual battery.  On appeal, Keys's appointed counsel from the Office of State

Public Defender, Indigent Appeals Division, filed a *Lindsey* brief, certifying that she has reviewed the record and has concluded that Keys's case does not present any arguable issues for appeal.[1] Keys subsequently filed a pro se brief in which he challenges the weight and sufficiency of the evidence and alleges various errors at trial. We have reviewed the issues raised by Keys and the record as a whole and find no reversible error. Therefore, we affirm Keys's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 28, 2013, AKT[2] went to Club Illusions in Gulfport, where she was training to be a waitress. She arrived at the club between 11 p.m. and midnight. AKT planned to get a ride home with a friend and her friend's boyfriend, but the boyfriend later told AKT that he could not give her a ride because he had been drinking. Another friend of AKT, Deanthony Haralson, then agreed to give her a ride home. Haralson lived near AKT. Haralson, AKT, and two men she did not know—later identified as Keys and Donnell Bolden—left the club in a four-door, silver Chevrolet sedan.

¶3. Keys gave Haralson the keys and told him to drive. Bolden sat in the front passenger seat, and Keys and AKT sat in the backseat. Haralson dropped Bolden off first, then drove to his apartment and got out of the car. Keys took over driving, and AKT moved into the front passenger seat. Keys told AKT he would take her home, but she soon realized he was driving in the wrong direction. She asked Keys where he was going, and he told her that he

---

[1] *See Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005).

[2] The Court of Appeals does not identify sexual assault victims. In the interest of the victim's privacy, initials have been substituted in place of her name.

needed to "hit a lick." Keys eventually stopped the car on the side of County Farm Road in a rural area of Harrison County. Keys told AKT that he needed to wait there for a friend to bring him money.

¶4. This angered AKT because it was around 5 a.m., and she needed to get home. She expressed her anger to Keys, then turned toward her side window. In her peripheral vision, AKT noticed movement and turned to see Keys stroking his penis. AKT tried to get out of the car and said she would find her own way home; however, Keys grabbed her, pulled her back inside the car, and told her, "[T]his ride ain't free." Keys threatened to shoot AKT and ordered her to remove her underwear. AKT told Keys that she had recently given birth and had stitches. Keys told her to perform oral sex on him instead.

¶5. AKT began screaming and crying, but Keys again threatened to shoot her and displayed a box-cutter blade. Keys held the blade near AKT's face as she began to perform oral sex on him. AKT was still screaming and crying, so Keys pulled her out of the car by her hair and pushed her up against the back of the car on the driver's side. Keys forced his penis inside AKT's vagina for approximately thirty seconds before a vehicle appeared on the road traveling in their direction. Keys shoved AKT to the ground so the passing car could not see her and held her there until the car passed. AKT realized it was a law enforcement vehicle and tried to signal the driver, but he did not see her.

¶6. Once the car passed, Keys picked up AKT, pushed her back over the car, and tried to penetrate her again. As he did, a truck appeared traveling in the opposite direction. AKT managed to break free of Keys and ran into the road in front of the oncoming vehicle. The

3

driver, Anita Corwin, stopped, and AKT ran to the passenger side door, screaming that she had been raped and pulling on the door handle. Corwin unlocked the door, and AKT got inside Corwin's truck.

¶7. Corwin saw the silver Chevrolet drive away, but she was not able to identify its driver. Corwin had just passed a fire station and had seen a deputy parked there, so she and AKT drove back to the fire station. As they drove, Corwin called 911 to report the assault.

¶8. Captain John Massengill of the Harrison County Sheriff's Office was at the fire station when Corwin and AKT arrived. Massengill had been driving the first vehicle that passed Keys's parked car. Massengill testified that he slowed as he passed and made eye contact with Keys. However, Massengill saw only Keys, and Keys did not indicate that he needed assistance, so Massengill continued to the fire station to use the restroom. Massengill testified that he intended to return to check on Keys after he left the fire station.

¶9. While at the fire station, Massengill heard a call over his radio that a possible assault had occurred on County Farm Road and that the victim was en route to the fire station. Massengill met Corwin and AKT at the front of the station. AKT was sobbing and shaking, and Massengill was afraid that she would go into shock. When Massengill led her inside the station, AKT ran toward a sink and began gagging and dry heaving. AKT eventually collapsed and was transported to the hospital via ambulance.

¶10. Before AKT collapsed, she told Massengill that the crime scene was the parked car he had passed on County Farm Road, so he broadcast a description of the vehicle: a newer model four-door sedan, gray or silver in color. Massengill was unable to give a full

4

description of Keys because it had been dark and he had only seen Keys from the waist up. Massengill and another deputy, Walter Dukes, returned to the area where Massengill had seen Keys's car. It was a cold morning, and there was frost on the ground, so the vehicle's tire tracks were easy to find. The officers also found AKT's underwear near the tracks.

¶11. Dukes met with AKT at the hospital. AKT told Dukes that she did not know the man who raped her, but she knew that he was a friend of Haralson. Investigators made contact with Haralson, and Haralson identified Keys as the only man in the car with AKT after they dropped him off at his apartment.

¶12. Nurse Jennifer Duncan was in the emergency room when AKT arrived by ambulance around 7:10 a.m. Duncan testified that AKT was upset and disheveled. AKT told Duncan that she had been sexually assaulted, so Duncan conducted a sexual assault exam to collect any evidence. AKT stated that the assault was oral and vaginal, so Duncan took swabs from AKT's mouth, vulva, and vagina. Duncan also collected AKT's clothes and drew a blood sample. AKT told Duncan that she had given birth about four weeks earlier. Duncan testified that AKT was crying throughout the examination. Duncan testified that AKT told her what had occurred. Duncan's testimony concerning what AKT told her was consistent with AKT's own testimony at trial.

¶13. An investigator with the Harrison County Sheriff's Office later collected a DNA sample from Keys. This sample, along with the swabs that Duncan collected from AKT, was given to Scales Biological Lab to perform DNA analysis. A forensic analyst from Scales testified that she performed tests on these swabs and could not exclude Keys or his patrilineal

5

relatives as potential contributors of the male DNA found on AKT's vulvar and vaginal swabs. The vulvar swab and vaginal swab were both a match for Keys or his patrilineal relatives. Both samples excluded 99.9 percent of the male population as contributors.

¶14. On September 2, 2014, a grand jury in the First Judicial District of Harrison County returned an indictment against Keys for two counts of sexual battery against AKT under Mississippi Code Annotated section 97-3-95(1)(a) (Rev. 2014). Count I alleged that Keys inserted his penis into AKT's mouth without her consent. Count II alleged that Keys inserted his penis into AKT's vagina without her consent. Keys was tried on August 10 and 11, 2015, and the jury returned a guilty verdict on both counts. The trial judge sentenced Keys to fifteen years for Count I and thirty years for Count II, with the counts to run consecutively, in the custody of the Mississippi Department of Corrections. Keys filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial, which was denied. On appeal, as noted above, Keys filed a pro se brief after his appointed counsel filed a *Lindsey* brief.

## ANALYSIS

¶15. The statement of issues in Keys's pro se brief identifies eleven assignments of error. Some of these issues overlap, and all may be categorized as challenges to the weight or sufficiency of the evidence, objections to jury instructions, or objections to comments by the prosecutor. We address the issues below in that order.

### I. Weight and Sufficiency of the Evidence

¶16. When we address a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The issue is not whether we would have found Keys guilty based on the evidence at trial; rather, his conviction must be affirmed if there was enough evidence for "any rational trier of fact" to have returned a guilty verdict. *Id.*

¶17.    "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18).  The evidence must be "[v]iewed in the light most favorable to the verdict," and we will affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial." *Id.* at (¶19).

¶18.    Applying these standards, we have no difficulty concluding that there was sufficient evidence to sustain Keys's convictions and that the verdict is not against the overwhelming weight of the evidence.   Our Supreme Court has long held that even "the totally *uncorroborated* testimony of a rape victim is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other evidence." *Christian v. State*, 456 So. 2d 729, 734 (Miss. 1984).  In this case, AKT's testimony was substantially corroborated by, inter alia, DNA evidence, Haralson's testimony, and the testimony of those to whom she immediately reported the assault.  There was ample evidence to support the jury's verdict finding that Keys sexually penetrated AKT both orally and vaginally without her consent. *See* Miss. Code Ann. § 97-3-95.

¶19. As to Count I, Keys argues that he should not have been convicted because Instruction S-4 stated as follows: "The Court instructs the jury that 'sexual penetration' is any penetration of the genital or anal openings of another person's body by any part of a person's body." Although the Court mistakenly omitted fellatio from this definition,[3] the elements instruction for Count I clearly required the jury to find beyond a reasonable doubt that Keys willfully committed sexual battery "by engaging in an act of sexual penetration, to-wit: by inserting his penis into the mouth of [AKT]" without her consent. The instruction further stated that if the jury could not find any one or more of the elements beyond a reasonable doubt, it was required to find Keys not guilty. The jury obviously found that all essential elements had been proven beyond a reasonable doubt. Given the clarity of the elements instruction, we find that the omission from the separate instruction was harmless.

¶20. Keys's pro se brief also makes a variety of arguments to the effect that there was insufficient evidence of his "intent" or "specific intent" because no witness testified about Keys's "mind set" or "state of mind." These arguments are without merit. The State was only required to prove beyond a reasonable doubt that Keys penetrated AKT without her consent and not by mistake or accident. *Cf. Friley v. State*, 856 So. 2d 654, 658 (¶18) (Miss. Ct. App. 2003) (Southwick, P.J., concurring) ("Sexual battery is a 'general intent' crime, i.e., it is only necessary that the accused have the intent to commit an unlawful act and that the offense not have been an accident or mistake."), *rev'd on other grounds*, 879 So. 2d 1031 (Miss. 2004). Again, there was ample evidence to support the jury's verdict and resultant

---

[3] *See* Miss. Code Ann. § 97-3-97(a) (Rev. 2014) ("'Sexual penetration' includes," inter alia, "fellatio . . . .").

convictions. Therefore, the trial court properly denied Keys's motions for a directed verdict, peremptory instruction, JNOV, and a new trial.[4]

## II. Jury Instructions

¶21. Keys challenges various jury instructions on a number of grounds. Our standard of review with regard to jury instructions "is well-established":

> Jury instructions must be read as a whole to determine if the instructions were proper. Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. This rule is summed up as follows: . . . , if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.

*Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009) (internal citations, quotation marks omitted).

### A. Instructions S-1 and S-2

¶22. Instructions S-1 and S-2 properly and completely instructed the jury on the elements of the offense of sexual battery as they related to Count I and Count II. At trial, defense counsel stated as to S-1, "We just object to it generally." As to S-2, defense counsel stated, "Again, we would just object to it." Counsel never articulated the basis of the objection. On appeal, Keys's pro se brief argues that the instructions were erroneous because they used the victim's initials rather than her full name. He also argues that the instructions were erroneous because they referred to his indictment, but his indictment was never read to the jury. There is no requirement that instructions use the victim's full name rather than initials

---

[4] Keys also argues that "the verdict is contrary to law," at least as to Count II, because the State presented evidence of "the totally separate crime" of rape. However, the law does not require the State to prosecute the defendant for rape when, as in this case, the evidence supports a charge of rape or sexual battery.

9

or that the indictment be read to the jury. Keys's challenges to S-1 and S-2 are without merit.

### B. Instruction S-3

¶23. Instruction S-3 read:

> The court instructs the Jury that in order to sustain a conviction for the crime of Sexual Battery some penetration must be proven beyond a reasonable doubt. However, it need not be full penetration. Even the slightest penetration is sufficient to prove the crime of Sexual Battery.

¶24. At trial, defense counsel objected to S-3 on the ground that "[t]he jury should understand and know what penetration is without a definition being given." In contrast, on appeal, Keys argues that the instruction's reference to "the slightest penetration" is a misstatement of the law, vague, and unconstitutional.

¶25. The instruction was a correct and proper statement of the law. The Mississippi Supreme Court has held that slight penetration is sufficient to constitute sexual battery. *Johnson v. State*, 626 So. 2d 631, 633 (Miss. 1993). In addition, this Court has approved this precise instruction as a "proper statement of the law." *Wilson v. State*, 990 So. 2d 798, 802 (¶13) (Miss. Ct. App. 2008) (citing *McKnight v. State*, 738 So. 2d 312, 318 (¶20) (Miss. Ct. App. 1999)); *accord Galloway v. State*, 122 So. 3d 614, 635 (¶¶38-39) (Miss. 2013); *see also Hicks v. State*, 441 So. 2d 1359, 1361 (Miss. 1984) (holding that the sexual battery statute's proscription of the non-consensual sexual penetration of another is "unambiguous" and constitutionally valid). This issue is without merit.

### C. Instruction S-4

¶26. As noted above, Instruction S-4 stated: "The Court instructs the jury that 'sexual penetration' is any penetration of the genital or anal openings of another person's body by

any part of a person's body." As discussed above, the instruction's omission of fellatio was harmless error because Instruction S-1 clearly instructed the jury on the essential elements of Count I. Aside from that issue, Keys argues that the instruction's use of the term "any" renders the instruction vague or misleading. However, the instruction properly and clearly states the applicable law. *See* Miss. Code Ann. § 97-3-97(a); *Galloway*, 122 So. 3d at 1361 (¶¶38-39). Accordingly, Keys's argument is without merit.

### D. *Sharplin* Instruction

¶27. After the jurors deliberated for some period of time, they sent the trial judge a note with a question concerning both Count I and Count II: "What happens if we cannot come to full consensus as to guilty or not guilty[?] We have some concern as to whether the sexual acts were consensual or not. Right now we have 11 guilty [and] 1 not guilty." The trial judge conferred with counsel and, over Keys's objection, gave a standard "*Sharplin* instruction," as approved by the Mississippi Supreme Court in *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976).[5] *See also Bell v. State*, 202 So. 3d 1239, 1241 (¶7) (Miss. 2016) (reaffirming that a *Sharplin* instruction may be given when the jury is returned for further deliberations). The jury continued its deliberations and returned a unanimous guilty verdict, which the jurors confirmed upon being polled.

¶28. A *Sharplin* instruction is given in lieu of an "*Allen* charge," which is used in federal court and which our Supreme Court has found to be "inappropriate and coercive." *Lafayette v. State*, 90 So. 3d 1215, 1217 (¶8) (Miss. 2012). A trial judge may give a *Sharplin*

---

[5] Counsel for Keys objected that the instruction was "improper" because the jury had been unable to reach a decision after "deliberating for a sufficient amount of time."

instruction if the judge receives a note indicating division among the jurors, but the "judge feels that there is a likelihood that the jury might reach a verdict" if returned for further deliberations. *Bell*, 202 So. 3d at 1241 (¶7) (quoting *Sharplin*, 330 So. 2d at 596). In the alternative, the judge may simply state to the jurors, "Please continue your deliberations." *Id.* Whether to give a *Sharplin* instruction is committed to the discretion of the trial judge, *Banks v. State*, 394 So. 2d 875, 878 (Miss. 1981), and the trial judge did not abuse his discretion in this case by giving an instruction that precisely tracked the instruction approved in *Sharplin*. Keys's argument is without merit.[6]

### III. Prosecutor's Comments

¶29. Keys claims that the prosecutor's use of words such as "rape" and "victim" was "inflammatory and prejudicial." Keys did not object to any of the allegedly prejudicial statements at trial, so these arguments are procedurally barred on appeal. *Walker v. State*, 913 So. 2d 198, 238 (¶148) (Miss. 2005). Moreover, a prosecutor is permitted to comment on "facts introduced in evidence, deductions and conclusions that may be reasonably drawn therefrom, and application of law to facts." *Byrom v. State*, 863 So. 2d 836, 873 (¶125) (Miss. 2003). The prosecutor's comments were based on AKT's testimony and were not

---

[6] Keys makes related assertions that the trial judge erred by not declaring a mistrial and by giving Instruction C-2. These issues are also without merit. Keys did not move for a mistrial at trial, so the issue is waived. In any event, the trial judge did not abuse his discretion by returning the jury for further deliberations rather than declaring a mistrial. *See, e.g.*, *Moore v. State*, 204 So. 3d 339, 341-43 (¶¶7-9) (Miss. Ct. App. 2016). Instruction C-2 is the standard instruction on the requirement of a unanimous verdict, which largely tracks the second paragraph of the standard *Sharplin* instruction. Keys did not object to the instruction, so the issue is procedurally barred. Moreover, the instruction was entirely proper and consistent with Mississippi Supreme Court precedent. *See, e.g.*, *Banks*, 394 So. 2d at 878.

inflammatory or unfairly prejudicial. Also, as discussed above, the jury was properly instructed on the State's obligation to prove the elements of sexual battery beyond a reasonable doubt. Accordingly, this argument is without merit.

¶30. Finally, Keys contends that the State unfairly commented on his decision not to testify at trial. Keys specifically points to four allegedly improper comments during the course of the State's closing argument:

- We know how the DNA got there. This defendant, without her consent, put his penis in her vagina. There has been no testimony to refute that.

- [AKT] puts herself on this witness stand to be cross-examined by the defense, and she . . . points at this defendant, and said this is the defendant that did this to me. And there's been nothing to refute that.

- [T]hey have an opportunity to call witnesses to support their theory. There has not been one person to take this witness stand to tell you Deanthony Haralson is from the father's side.[7] Not one. The evidence is that he is not. There is nothing to refute it. That's what I mean, you look at the credible evidence. And what does it support? It all points to one person and one person alone.

- And there's been no credible evidence to dispute [AKT's testimony]. All the defense has tried to do is throw out as much stuff as possible to attack every witness without putting on any credible evidence to support it, not one.

¶31. Keys failed to object to any of these comments at trial, so we review his claim only "under the doctrine of plain error." *Mitchell v. State*, 21 So. 3d 633, 642 (¶31) (Miss. Ct. App. 2008). "As applied to closing arguments, plain error may only be found when the substance of the statement is out of bounds for closing arguments." *Id.* (quoting *Boyd v.*

_____

[7] Recall that forensic analysis could not exclude Keys or his patrilineal relatives as potential contributors of the male DNA found on AKT's vulvar and vaginal swabs.

13

*State*, 977 So. 2d 329, 337 (¶34) (Miss. 2008)) (quotation marks omitted). However, regardless of our standard of review, we find no error in the State's closing argument. The Mississippi Supreme "Court has repeatedly held that attorneys on both sides are allowed wide latitude in their closing arguments and that *there is an obvious difference between a comment on the defendant's failure to testify and a comment on the defendant's failure to put on a credible defense*." *Wright v. State*, 958 So. 2d 158, 164 (¶14) (Miss. 2007) (emphasis added) (citing *Underwood v. State*, 919 So. 2d 931, 939-40 (¶23) (Miss. 2005); *Howell v. State*, 860 So. 2d 704, 751-52 (¶169) (Miss. 2003)); *accord Dora v. State*, 986 So. 2d 917, 921-24 (¶¶8-14) (Miss. 2008). While the former is not permitted, the latter is permissible. As in the above-cited cases, the prosecutor's comments during closing argument in this case were directed toward Keys's general failure to put on a credible defense, not his decision not to testify. Accordingly, the prosecutor's comments did not violate Keys's constitutional rights.[8]

**CONCLUSION**

¶32. The State presented sufficient evidence to convict Keys of two counts of sexual battery, and the jury's verdict was not against the overwhelming weight of the evidence. In addition, the jury was fairly instructed on the applicable law, and Keys was not unfairly prejudiced by the prosecutor's comments or closing argument. Accordingly, Keys's convictions and sentences are affirmed.

¶33. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF TWO COUNTS OF SEXUAL**

---

[8] Keys's pro se brief also argues that he is entitled to reversal based on "cumulative error." As we have found only one harmless error in the wording of Instruction S-4, Keys's cumulative error argument fails as well.

**BATTERY, AND CONSECUTIVE SENTENCES OF FIFTEEN YEARS AND THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**