# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00346-COA

**KENNETH WILLIAMS A/K/A KENNETH L.**                               **APPELLANT**
**WILLIAMS A/K/A KENNETH LEE WILLIAMS**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

DATE OF JUDGMENT:                02/06/2020
TRIAL JUDGE:                     HON. JANNIE M. LEWIS-BLACKMON
COURT FROM WHICH APPEALED:       HOLMES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:               AKILLIE MALONE OLIVER
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 12/17/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     A Holmes County Circuit Court jury convicted Kenneth Williams of first-degree murder for killing his aunt, Faye Ann Noel (Faye). The Holmes County Circuit Court sentenced Williams to serve life without eligibility for parole or early release in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Williams argues the circuit court erred by allowing the use of improper hearsay as substantive evidence against him, and by allowing the State to comment on his exercising his Fifth Amendment right not to testify. Finding no reversible error, we affirm Williams's conviction and sentence.

**FACTS**

¶2.    It is largely undisputed that on May 24, 2014, Williams shot and killed Faye after he had a disagreement with his uncle, Simmy Noel. At trial, Williams presented an insanity defense through the testimony of his family members. On the day of the killing, the dispute began at a family gathering when Simmy observed that Williams's son needed medical attention. When Simmy told Williams, it led to a dispute between the two over taking the child to receive medical care. Simmy and Williams were asked to take their altercation outside, and when the situation seemed to diffuse, Simmy returned inside. Another family member, Sally Smith, testified that she witnessed Williams retrieve a weapon from his vehicle before she walked away. After Williams fired the shotgun, Faye and Simmy stepped outside to see what happened. Simmy testified that at this point, he witnessed Williams pointing his gun directly at Faye. Then Simmy unsuccessfully tried to keep Williams from shooting Faye. Simmy testified that Williams shot Faye in the chest as she stood in the doorway of the home. While Simmy ran to get some help, Williams left the scene of the crime. Faye was pronounced dead when she arrived at the hospital.

¶3.    At the hospital, Captain Sam Chambers with the Holmes County Sheriff's Department met and talked with the family members to obtain preliminary information about the shooting and identify a suspect. Chambers later went to the crime scene and found shell casings and blood. The day after the shooting, two other family members, including Annie Noel, took Williams to the hospital after an apparent drug overdose. They found Williams walking from a wooded area behind their house where his truck was later located. Annie testified that

Williams had white stuff coming out of his mouth, and he passed out before they took him to the emergency room.

¶4. Williams was indicted on the charge of first-degree murder in August 2014. In November 2014, the circuit court granted Williams's petition for a psychiatric examination due to his history of mental illness and to determine competency. After the conclusion of his mental evaluations, the circuit court determined that Williams was competent to stand trial.

¶5. At trial, the jury heard from multiple lay witnesses on behalf of the State. In his defense, Williams offered the testimony of his mother and two brothers, who all testified to his history of mental health struggles. His mother stated he was diagnosed with schizophrenia and bipolar disorder as a child. All three witnesses testified to occurrences of outbursts, previous violent activity, and mental health hospitalizations. In rebuttal, the State called an expert psychologist, who performed a mental evaluation on Williams following his indictment. After considering all the evidence and testimony, the jury found Williams guilty of first-degree murder. After sentencing, Williams unsuccessfully moved for judgment notwithstanding the verdict or a new trial. Aggrieved, he appeals.

## DISCUSSION

### I. Hearsay Testimony

¶6. On appeal, Williams first asserts that the trial court erred by allowing the use of improper hearsay as substantive evidence against him. This Court reviews the admission or exclusion of evidence for an abuse of discretion. *Colburn v. State*, 368 So. 3d 347, 349 (¶17) (Miss. Ct. App. 2023) (citing *Robinson v. State*, 42 So. 3d 598, 603 (¶14) (Miss. Ct. App.

3

2010)). "[A]bsent an abuse of that discretion, the trial court's decision will not be disturbed on appeal." *Id*. (citing *Clarke v. State*, 859 So. 2d 1021, 1024 (¶18) (Miss. Ct. App. 2003)). Generally, Mississippi Rule of Evidence 801(c) defines hearsay as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." *Blanden v. State*, 276 So. 3d 1204, 1211 (¶28) (Miss. Ct. App. 2018) (quoting MRE 801(c)).

¶7.     "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *McCollum v. State*, 372 So. 3d 980, 988 (¶27) (Miss. 2023) (quoting *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020)). Over Williams's objection, Chambers was allowed to testify during trial as to what family members told him at the hospital about the facts and circumstances of the killing. Williams alleges that the trial court improperly allowed Chambers to go beyond testifying to his personal observations and the actions he took in pursuit of his investigation. Specifically, he alleges it was error to allow him to testify that Simmy told him at the hospital that Williams was the person who killed Faye and that before the shooting, Williams said somebody was going to die that night. He also takes exception to Chambers's description of Simmy recounting the shooting to him, stating that the gun was fired from the yard striking Faye in the chest as she stood in the doorway. For the same reasons, Williams contends it was error to allow Chambers to testify to what the grandmother, Lou Ethel Noel, also told him that night at the hospital. His contention centers around her similar description of the dispute with Simmy that led to the shooting, her

4

observation of Williams obtaining the shotgun from his truck, and his firing it the first time into the air as she left to get help from a deputy who lived nearby. The circuit court held that Chambers's testimony fell under an exception to the hearsay rule that allowed him to testify as to what led to the next steps in his investigation. *See Fullilove v. State*, 101 So. 3d 669, 675 (¶20) (Miss. Ct. App. 2012) (finding out-of-court statements obtained by police during the course of their investigations admissible). After overruling the objections, the circuit court appropriately ruled that the testimony should be limited in scope and noted that Simmy was expected to testify later in the trial.

¶8.     In a case similar to the facts before us, this Court upheld the admission of an officer's testimony where he recounted statements made by a witness at the scene of an attempted murder. *Beale v. State*, 361 So. 3d 673, 682 (¶41) (Miss. Ct. App. 2022). At trial, the officer was asked what he learned from the witness upon arriving. *Id*. He testified, "[S]he stated that [Beale] had been drinking all night and appeared to be heavily intoxicated at this point and said that if the police were called, that he was going to kill them." *Id*. We found that it was within the trial court's discretion to allow the statement where the witness, like Simmy here, testified at trial and was subject to cross-examination. *Id*. at 683 (¶43). More importantly, we noted that the "statements were not admitted to prove the truth of the matter asserted; rather, his statements were admitted to explain the next steps in the course of his investigation." *Id*. at 682 (¶43). In the case before us, Chambers first reported to the hospital upon learning the basic information that a shooting had occurred. The statements he received from the family at that first interaction guided the next steps he would take in his investigation and were

5

testified to repeatedly by other witnesses at the house during the time of the crime. Accordingly, we find the circuit court did not abuse its discretion by allowing him to testify about the limited information he learned at the hospital at the outset of his investigation.

## II. State's Comments

¶9. Williams next alleges that during closing arguments, the State violated his Fifth Amendment right not to testify by stating, "Now notice when he shot and killed her, he didn't say he blacked out." Williams did not object to this statement at trial, so the argument is procedurally barred on appeal. *Keys v. State*, 219 So. 3d 559, 568 (¶31) (Miss. Ct. App. 2017). Accordingly, his only remedy on this issue is under the doctrine of plain error. "As applied to closing arguments, plain error may only be found when the substance of the statement is out of bounds for closing arguments." *Id*. (quoting *Mitchell v. State*, 21 So. 3d 633, 642 (¶31) (Miss. Ct. App. 2008)). The Supreme Court "has repeatedly held that attorneys on both sides are allowed wide latitude in their closing arguments[,] and . . . there is an obvious difference between a comment on the defendant's failure to testify and a comment on defendant's failure to put on a credible defense." *Wright v. State*, 958 So. 2d 158, 164 (¶14) (Miss. 2007). "The decision as to whether a prosecutor's comment was improper must be based on the context in which the comment was made." *Whitlock v. State*, 941 So. 2d 843, 846 (¶8) (Miss. Ct. App. 2006) (quoting *Johnson v. State*, 914 So. 2d 270, 272 (¶11) (Miss. Ct. App. 2005)). In other words, we must not just look at a single sentence without recognizing the broader substance of the argument and the context of the testimony and evidence offered by both parties during the trial. As a primary witness who offered to

demonstrate facts supporting Williams's insanity defense and mental health struggles, his mother was asked on direct examination whether he "was aware of what he was doing" during episodes when he was acting out. She replied, "No, because when we be telling him things that he had done, he don't remember." To rebut this defense, during closing arguments, the State submitted:

> Now notice when he killed her, he didn't say he blacked out. He didn't hang around, gloat, or anything like that, didn't apologize, didn't say it was a mistake. What he did do, was he ran. He ran away. He drove his truck off before anyone else could get there. And anyone who would do something wrong, that's exactly what they do.

Taking into consideration the broader scope of rebutting Williams's defense, it is clear that the State was not commenting on Williams's failure to testify but, rather, his failure to prove that he blacked out and therefore did not know what he was doing when he shot and killed Faye. Accordingly, we find this assignment of error is without merit.

## CONCLUSION

¶10.   Finding no reversible error, we affirm Williams's conviction and sentence.

¶11.   **AFFIRMED.**

**CARLTON P.J., LAWRENCE AND WEDDLE, JJ., CONCUR. BARNES, C.J., WILSON, P.J., McDONALD AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY BARNES, C.J., WILSON, P.J., McDONALD AND LAWRENCE, JJ. WESTBROOKS, J., NOT PARTICIPATING.**

**McCARTY, J., DISSENTING:**

¶12.   Because nearly all of Captain Chambers' testimony was hearsay, he should not have been allowed to testify as to what Williams' family members told him.  Furthermore, to the

7

extent the captain was allowed to testify to the statements made by Williams' grandmother—who was not present at trial—this constituted a violation of the Confrontation Clause. Therefore, I must respectfully dissent.

¶13. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." MRE 801(c). Acknowledging a narrow exception, our Supreme Court and this Court have consistently held that out-of-court "[s]tatements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Kirby v. State*, 379 So. 3d 915, 922 (¶12) (Miss. Ct. App. 2024) (quoting *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020)). As such, "[w]hen an officer's testimony is being used to explain *why he did what he did in the course of his investigation*, not to prove the truth of the matter asserted, then the testimony is not hearsay and is therefore admissible." *Edwards v. State*, 379 So. 3d 906, 912 (¶23) (Miss. Ct. App. 2024) (quoting *Dukes v. State*, 369 So. 3d 553, 562-63 (¶35) (Miss. 2023) (emphasis added)).

¶14. So while this narrow exception does exist, it is not without limits. This exception does not grant complete latitude to admit through a back door evidence that would otherwise be impermissible hearsay.

¶15. This Court recently applied the course-of-investigation exception to the hearsay rule, ultimately finding an officer's statements were properly admitted. *Kirby*, 379 So. 3d at 922 (¶14). In *Kirby*, the defendant was indicted for and later convicted of first-degree murder and two counts of possession of a weapon by a felon. *Id.* at 919 (¶1). On appeal, he argued that

an officer's testimony recounting another officer's statements about him was hearsay and that his trial counsel should have objected. *Id.* at 921 (¶10). Mindful of the narrow exception, we found that the officer's testimony regarding the information he received from the other officer was not offered to prove the truth of the statements. *Id.* at 922 (¶13). Rather, the officer's testimony "explained the sequence of events that led to the initial search of Kirby's truck and the discovery of the murder weapon." *Id.* Therefore, the statements were "offered for a non-hearsay purpose" and were properly admitted. *Id.* at (¶14).

¶16. In the present case, the majority concludes that the statements Captain Chambers "received from the family . . . guided the next steps he would take in his investigation and were testified to repeatedly by other witnesses[.]" But such a conclusion creates a two-fold problem.

¶17. First, unlike the officer in *Kirby*, Captain Chambers' testimony was not "used to explain why he did what he did in the course of his investigation." *Edwards*, 379 So. 3d at 912 (¶23). Instead, the State essentially used Captain Chambers' testimony—under the guise of the narrow exception—to relay a detailed narrative of the family's recollection of the shooting, or for the truth of their statements. His testimony centered around what Williams' family members told him they did and observed on the day of the incident but offered virtually no insight regarding what he did with that information to guide the next steps of the investigation. Aside from Captain Chambers' testimony that speaking to Simmy prompted him to visit the crime scene, where he found a twenty-gauge shell casing and saw blood in the front doorway, the rest of his testimony was quintessential hearsay.

9

¶18.    This case is closer to one where our Supreme Court found an officer's testimony was hearsay and should have been excluded. *Harrison v. State*, 722 So. 2d 681, 683 (¶8) (Miss. 1998).   In *Harrison*, the officer's testimony centered around what unidentified church members told him after the church was burglarized.  *Id.* at 683 (¶3).   Arguing that the officer's testimony was "impermissible hearsay" and "prejudicial," the defendant appealed. *Id.*

¶19.    The Supreme Court held that "[t]he hearsay statement by unidentified church members that Shoemake testified to was hearsay and should have been excluded as evidence." *Id.* at (¶8).   For "the[se] out of court statement[s]" were "introduced for the truth of the matter asserted[.]" *Id.* at (¶9).   Crucially, the State could have easily brought the testimony into evidence through proper means; for instance, the officer "could have testified to . . . his first hand knowledge," and "[t]he State also could have presented the declarant as a witness and asked him or her [questions] directly . . . [but] [t]his was not done." *Id.* at 684 (¶8). Nonetheless, the Supreme Court found harmless error "given the other evidence presented[.]" *Id.* at (¶9).

¶20.    During Williams' trial, the State made no attempt to conceal that it was eliciting pure hearsay from the captain.  The specific phrasing of the State's questions to Captain Chambers follows:

> The State:     Okay.  When you talked to Simmy.  **What did Simmy tell you that happened?**[1]

---

[1] The defense objected for a second time "to what Mr. Noel . . . told him in as much as Mr. Noel was present and can testify on his own.  And that would be impermissible hearsay at this point."  Relying  on the course-of-investigation exception once again, the

. . . .

> The State: Captain Chambers, as part of your investigation, can you give us, I guess, a summary of what it is **that Simmy told you that happened?**

. . . .

> The State: And prior to Kenny shooting Faye, **do you recall what [Simmy] said happened** regarding what Kenny said prior to shooting Faye?

. . . .

> The State: Court's indulgence. Do you recall any information **that Ms. Smith** [Simmy's sister] **may have told you** regarding this incident?[2]

(Emphasis added).

¶21. At least two of the family members the captain interviewed were called to testify at trial, and Simmy, specifically, was present at the house when the shooting occurred. Just as in *Harrison*, there was no reason for Captain Chambers to simply parrot the detailed information others told him, such as Simmy, a witness with first-hand knowledge.

¶22. But Captain Chambers' testimony creates a second problem. The circuit court allowed him to testify to what Williams' grandmother, Lou Ethel Noel, told him. But Lou Ethel did not testify at trial and therefore could not be cross-examined. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) ("The Confrontation Clause of the Sixth Amendment provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

---

State claimed the captain's testimony was "clearly an exception to the hearsay rule." The trial court allowed the captain to "say a summary of what Simmy told him[,]" but further clarified "that if Simmy is here to testify, let him testify as to the details of the case."

2 Once again, the defense objected on hearsay grounds. Once again, the trial court overruled the objection.

11

with the witnesses against him'"); *see also Crawford v. Washington*, 541 U.S. 36, 59 (2004) (recognizing "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine"). Nonetheless, the trial court allowed Captain Chambers to testify as to what Lou Ethel told him.

¶23. At one point during trial, counsel for Williams requested the portion of the captain's testimony relating to statements made by Lou Ethel be stricken because it had "already come in through two of the other witnesses," and even under the exception, Captain Chambers was limited to "tell[ing] us what he did as a result of what he was told." The defense emphasized that the exception did not give the captain free rein to "sit there and say verbatim what somebody else said. That's still hearsay."

¶24. Defense counsel was correct—it was still hearsay. Because those statements and many others testified to by Captain Chambers constituted impermissible hearsay and were not subject to the narrow course-of-investigation exception to the hearsay rule, they should not have been admitted. Accordingly, I respectfully dissent.

**BARNES, C.J., WILSON, P.J., McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION IN PART.**